Richard J. HARTIG, Appellee,

v.

Thomas FRANCOIS d/b/a Thomas Francois Masonry, Appellant.

No. 95–1715.

Supreme Court of Iowa.

April 23, 1997.

Samuel C. Anderson of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

Robert L. Sudmeier and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Plaintiff, Richard Hartig, contracted with T. Curt Francois (Curt), the son of defendant, Thomas Francois (Francois), for the construction of a retaining wall. Francois worked on a portion of the project. When the retaining wall subsequently collapsed, Hartig sued Curt and Francois, claiming the wall was defectively designed and constructed. Francois was originally dismissed from the suit on a summary judgment motion. The case proceeded to trial, resulting in a verdict against Curt. On appeal of the summary judgment ruling, we reversed and remanded Hartig's claim against Francois for trial. *Hartig v. Francois*, 519 N.W.2d 393, 395 (Iowa 1994).

On remand, the case was tried to the court. The district court held Francois liable for failing to exercise the skill and knowledge normally possessed by those engaged in the trade of retaining wall construction. Francois appeals, arguing he had no duty to exercise the skill and knowledge of a retaining wall expert. We agree and reverse.

## I. *Background Facts.*

The trial court made the following findings of fact. Hartig and his wife owned a home located on a bluff overlooking the Mississippi River. They decided to build a retaining wall on the river side of their property to level the slope of their lot. They contracted with Curt Francois to build the wall. The wall was almost V-shaped with a long west length, a very short south section, and a very long east length. Originally, the wall was to be six feet in height and approximately 210 feet long. By the time construction was completed, however, the wall rose to eleven feet in height on portions of the east section and was 383 feet in length.

Curt is the son of Thomas Francois who operates a masonry business in Dubuque. Curt worked for his father in that business and moonlighted on his own building retaining walls. Francois is in the business of installing brick, block and stone veneer on homes and fireplaces. Francois has never bid on a retaining wall project. On occasion, however, the contractor of new homes where Francois was working would ask him to construct a retaining wall as part of the landscape finishing work. The height of the walls on these projects varied from two to six feet, but averaged three to four feet; the longest wall was twenty feet in length. The construction of small retaining walls has been a very minor part of Francois' business.

Francois became involved in the construction of Hartig's retaining wall when Curt began to have back problems and could no longer work on the wall. By then, all the footings had been poured, the east wall was completed, and the bottom half of the west wall was in place. Francois helped to finish the wall. He hauled stone, mixed mortar, and laid stone. Francois was the most experienced person on the job and organized the other workers each day at the jobsite. He worked on the project until the wall was completed, approximately thirty-four hours. Curt paid the laborers who worked on the wall $12 per hour. He paid his father $20 per hour for a portion of his work in recognition of his greater experience and responsibility.

After the wall was completed, portions of it began to collapse. Expert testimony at trial established the collapse was due to the use of stone that was too small for a wall over four feet in height. Curt had determined the size of the stone to be utilized in the retaining wall and had purchased it. Francois was not involved in bidding the job or purchasing materials for the job. Nor was he aware that retaining walls using the stone used in the Hartig wall should not be higher than four feet. Additional facts and evidence will be reviewed in our discussion of the issues.

## II. *Prior Proceedings.*

Hartig sued Curt and Francois. Francois obtained a summary judgment ruling in his favor and the case proceeded to a bench trial on Hartig's claim against Curt. The court held Curt liable for the cost of repairing the collapsed wall, concluding he did not have the expertise to construct the wall requested by Hartig and the wall he did construct was "defective based on accepted engineering standards and practices." Upon completion of the trial, Hartig appealed the summary judgment in Francois' favor. On appeal we reversed, holding genuine issues of material fact existed on whether Francois was engaged in a joint venture with Curt and on whether Francois was negligent in the construction of the retaining wall. *Hartig,* 519 N.W.2d at 394–95.

On remand, the case was tried on the record made in the previous trial, supplemented by additional evidence presented to the court. The parties considered the ruling of the court on Hartig's claim against Curt to be res judicata of the same issues in Hartig's case against Francois. Upon this record, the court issued a ruling, holding a joint venture did not exist between Curt and Francois. As to the negligence theory, however, the court ruled Francois was liable. The court concluded Francois had failed to use due care because he had not exercised the skill and knowledge normally possessed by those engaged in the trade of retaining wall construc-

tion. The court also held Francois was negligent in his construction of the retaining wall because he knew he had no knowledge as to the adequacy of the wall, yet he proceeded with construction without warning Hartig that he lacked this knowledge.

Francois appeals. He claims that while a retaining wall expert might have known the wall was too high, as a simple laborer he had no duty to realize or warn of this problem. Hartig contends that because Francois is a stone mason, he should have known and warned Hartig the wall was too high for the size of stone and footings used. Our review is for correction of errors of law. Iowa R.App. P. 4.

## III. *Testimony on Standard of Care.*

■ The elements of a negligence claim are familiar: existence of a duty to conform to a standard of conduct to protect others, failure to conform to that standard, proximate cause, and damages. *Marcus v. Young,* 538 N.W.2d 285, 288 (Iowa 1995); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 30, at 164–65 (5th ed. 1984) [hereinafter "Prosser"]. Hartig called two experts to testify on the standard of conduct applicable to the building of retaining walls, Dennis Waugh and Fred Becker.

*A. Dennis Waugh's opinions.* Waugh is a consulting engineer with a bachelor's degree in civil engineering and a master's degree in structural engineering. Hartig employed Waugh to recommend repairs to the retaining wall after its collapse. Waugh testified the wall built by Curt did not conform to accepted levels of safety or design standards. More specifically, he stated the wall should have been constructed of larger stone at the bottom with gradually smaller stone tapering to the top. In contrast, Hartig's wall was built using the same size stone from bottom to top, a design that would be safe only to a height of four feet.[1] Waugh expressed no opinions on the quality of the

---

1. Both experts also criticized the size of the footings, testifying they were too small for any section of the wall over three to four feet. Although the footings were potentially a problem, neither expert saw any evidence the footings had

failed. In the absence of any evidence the inadequate footings were a proximate cause of the collapse of the wall, we focus our attention on the experts' testimony concerning the size of the stone used in the wall.

construction, concluding the problem with the wall was one of design.

Waugh testified a stone contractor would know and appreciate that the wall built by Curt was insufficient to retain the earth behind it. On the other hand, he also acknowledged those who build "smaller retaining walls for landscape purposes" would not be familiar with the engineering requirements for larger walls.

B. *Fred Becker's opinions.* Fred Becker also testified on behalf of Hartig. Becker is a building stone contractor; he fabricates stone and constructs stone retaining walls. Hartig employed Becker to build a retaining wall on his property after the one built by Curt failed. Becker testified the stone used by Curt was inappropriate and a stone mason of average skill would know that.

Becker was also questioned about the expertise of Francois. Becker testified Francois was not one of his competitors in the retaining wall business. Francois works with stone veneer, a four-inch-wide stone placed on a house or fireplace in lieu of brick. Becker agreed that stone veneer "has nothing to do with the type of stone" used in the retaining wall project.

IV. *Applicable Law.*

In the first appeal of this case, we held Francois' status as an employee did not preclude liability for his own negligence. *Hartig,* 519 N.W.2d at 395. This liability is based " 'upon the common-law obligation that every person must so act, or use that which he controls, as not to injure another.' " *Id.* (quoting 53 Am.Jur.2d *Master and Servant* § 446, at 464 (1970)).

■ The issue on this second appeal is whether there is substantial evidence that Francois violated an applicable standard of care. Hartig argues, and the trial court found, as a stone mason Francois knew or should have known the wall was unreasonably unsafe. There was certainly substantial evidence to support a finding a stone mason would know or should have known the wall was dangerous. The fighting issue appears to be whether there is sufficient evidence to support a factual finding that Francois was a stone mason and so should be held to this standard of knowledge. We conclude there is not.

In our review of the record, we find no evidence Francois was a "stone mason" as that term was used by Hartig's experts. Francois' business was stone veneer. Becker acknowledged stone veneer is something entirely different from the stone used to construct retaining walls. Although Francois has erected small retaining walls at contractors' requests when needed for simple landscaping purposes, Waugh testified someone working on these types of projects would not be familiar with the engineering principles necessary to recognize the problems in Hartig's retaining wall. Therefore, the court's underlying premise—that Francois was a stone mason with expertise in retaining wall construction—is not supported by substantial evidence.

■ The trial court apparently believed, however, that Francois should be held to the standard of care of an expert because he undertook to act as one. The court relied on a principle of law found in the Restatement (Second) of Torts:

> Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

Restatement (Second) of Torts § 299A, at 73 (1965) [hereinafter "Restatement"].[2] The applicability of a standard of care common to members of a trade depends, therefore, on whether the defendant has undertaken "to render services in the practice of [that] trade." *Id.*

■ We note preliminarily there is some disagreement between the parties as to the nature of the conduct causing Hartig's dam-

---

2. We have previously adopted § 299A as the law in Iowa with one change. We have substituted the phrase "under like circumstances" for the phrase "in similar communities." *Menzel v. Morse,* 362 N.W.2d 465, 471 (Iowa 1985).

ages. As shown by the testimony of Hartig's expert witnesses, the negligence causing the collapse of the retaining wall was the design choice on the size of stone to be used. There is no evidence Francois played any role in this decision; in fact, the stone had already been purchased and the project more than half completed when Francois assisted in constructing the remaining portions of the wall. Thus, liability cannot be imposed on Francois for the choice of stone.

■ Hartig's response is that Francois should have recognized the danger in the retaining wall when he became involved in the project and he then had a duty to stop construction or alert Hartig to the problem. The only service Francois undertook to render to Hartig was the manual labor necessary to complete the retaining wall. In the absence of other circumstances, Francois' conduct should be judged by the standards applicable to a reasonable laborer. *See* Restatement § 299A, at 73 (person engaged in a trade is required to exercise skill and knowledge normally possessed by members of that trade). The evidence reveals no circumstances justifying a departure from this general rule.

■ When one represents that he has a higher level of skill or knowledge beyond that common to his trade, he is held to that higher standard of care. *Id.* cmt. d, at 74. No one, including Hartig, testified Francois represented he had any skill or knowledge beyond that of a laborer. The mere fact he had more experience than the other workers may explain why he organized the work of the crew each day, but it is not equivalent to a representation he was knowledgeable concerning the design standards for retaining walls. In other words, he may have been an experienced laborer, but he was still a laborer. A person is also required to exercise any superior knowledge or judgment he actually has, even if he has not represented that he has superior knowledge or judgment. *Id.* § 289(b), at 41. Again, there was no evidence Francois actually recognized or had the knowledge to realize the danger in the retaining wall he helped construct. Consequently, the issue here is whether Francois, as a laborer on this project, should have

recognized the danger in the retaining wall under construction on Hartig's property.

■ An employee who carefully carries out the plans, specifications and directions given the employee by the employer is not liable for defects in those plans, specifications or directions unless they are "so obviously defective and dangerous that no reasonable man would follow them." Prosser § 104A, at 723–24. The only evidence here was that a reasonable *stone mason* would recognize the danger, not a reasonable *laborer*. We conclude, therefore, there is not substantial evidence a laborer on such projects would or should be aware of the correct size stone to use in building retaining walls more than four feet high. Consequently, it was error for the court to impose a duty on Francois to halt work on the retaining wall or inform Hartig of the potential problems.

Because we conclude the trial court relied on an inapplicable standard of care in evaluating the reasonableness of Francois' conduct, we must reverse. We remand to the district court for entry of judgment in favor of defendant.

**REVERSED AND REMANDED.**